## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10-MJ-605 |
| v. | ) | |
| | ) | |
| KARL KLEBER | ) | |

## MOTION FOR PRETRIAL RELEASE

Defendant Karl Kleber is a German citizen who legally entered the United States at Newark International Airport on January 12, 2011. Mr. Kleber intended to continue traveling to Dallas, Texas to visit a close family friend, Raymond Hamilton, before attending an industry trade show in Las Vegas, Nevada, but was arrested by Customs and Border Protection upon his arrival at Newark Airport. Mr. Kleber is currently detained on a criminal complaint charging him with aiding and abetting the illegal importation of Chinese-manufactured rifle drum magazines.

The government urges Mr. Kleber's detention as a risk of flight, even though Mr. Kleber faces the likely prospect of spending more time in pre-trial detention than he would ultimately face if he were convicted of the offense with which he is charged. This result would be deeply at odds with both the presumption of innocence at this stage of the proceedings as well as the strong presumption against pretrial detention codified in the Bail Reform Act, 18 U.S.C. § 3142, *et seq.* Mr. Kleber respectfully requests that this Court grant him pretrial release pursuant to appropriate conditions. Mr. Kleber is not a danger to the community and is not a flight risk. For the reasons explained herein, because this Court can fashion conditions of release that will

reasonably assure that Mr. Kleber appears at the trial in this matter, his continued detention is unnecessary and unwarranted.

## I.
## PROCEDURAL HISTORY

On July 2, 2010, a criminal complaint was filed under seal in the United States District Court for the Western District of New York against Mr. Kleber. The complaint details a criminal investigation dating back to 2008. The complaint alleges that Mr. Kleber aided and abetted the importation of Chinese-manufactured AK-47 rifle drum magazines by falsely representing that the rifle drum magazines were made in Bulgaria. Specifically, the complaint affidavit alleges that Mr. Kleber and his business partner, Gary Hyde, supplied drum magazines to ATI, a company based in Rochester, New York. The affidavit claims that Mr. Kleber and Mr. Hyde misrepresented the drum magazines' country of origin, and led ATI to believe they were manufactured in Bulgaria, not China. Accordingly, the affidavit concludes, because the United States bars the importation of certain munitions that originate in China, Mr. Kleber's actions violated U.S. law, specifically, 18 U.S.C. § 545 and 18 U.S.C. § 2. The criminal complaint does not allege any other violations of U.S. law, does not allege that Mr. Kleber engaged in any violent acts, and does not allege that Mr. Kleber caused any physical harm to any other individual. Indeed, it is clear from the face of the complaint that if the drum magazines at issue had actually been manufactured in Bulgaria rather than China, there would be nothing illegal about Mr. Kleber's conduct.

Mr. Kleber was arrested without incident by federal agents at Newark International Airport on January 12, 2011. Mr. Kleber immediately cooperated with federal authorities. Mr. Kleber subsequently agreed to his removal in custody from the District of New Jersey to the Western District of New York on January 13, 2011. Mr. Kleber was transferred to the Western

District of New York on January 14, 2011, and has remained in custody at the Monroe County Jail.

## II.
## ARGUMENT

As there is no suggestion that Mr. Kleber is a danger to the community, and the crime of which he has been charged is not of the limited type where pretrial detention is necessary, the only reason for his continued detention is the government's unsubstantiated concern that Mr. Kleber would flee the United States and return to Germany if he was released.   The government's fear, however, is based on nothing other than Mr. Kleber's German citizenship and ignores the unique facts and circumstances of Mr. Kleber's case.  Ample authority, both in this district and across the country, has rejected the government's "foreign citizenship" argument against granting bail to foreign nationals.  Courts have consistently required the government to prove a individualized risk of flight above and beyond the mere fact that a foreign national could flee and extradition could not "guarantee" his return.  As explained below, for defendants in similar circumstances and facing substantially more severe penalties than Mr. Kleber, courts have regularly fashioned appropriate conditions to allow for pretrial release of foreign nationals.

### A. The American Criminal Justice System Embraces a Strong Presumption Against Pretrial Detention.

The Supreme Court has emphatically stated that "[f]rom the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), 18 U.S.C.A., federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail.  This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951).  "[O]nly in rare circumstances should release

3

be denied," *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985), and "[d]oubts regarding the propriety of release should be resolved in favor of the Defendants." *Id.*

This strong presumption against pretrial detention is codified in the Bail Reform Act, 18 U.S.C. § 3141, *et seq.* Pursuant to 18 U.S.C. § 3142(f), a government motion seeking pretrial detention is proper only if the defendant is charged with one of the enumerated crimes listed therein,[1] or if there is a serious risk that the defendant will flee or obstruct or attempt to obstruct justice. Here, Mr. Kleber has not been charged with one of the offenses listed in § 3142(f) that warrants detention. Therefore, his pretrial detention is only proper if the government, first, is able to establish "by a preponderance of the evidence that [Mr. Kleber] … presents a risk of flight," *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988), and then that there are no conditions or combinations of conditions which reasonably will assure the Mr. Kleber's presence at trial if he is released. *See United States v. Shakur*, 817 F.3d 189, 195 (2d Cir. 1987).

As explained below, it is simply not the case that no set of conditions will assure Mr. Kleber's appearance in the Western District of New York for trial. For foreign defendants facing similar circumstances, courts within the Western District of New York and elsewhere have held that pretrial detention is unwarranted. Moreover, the Magistrate Judge in the District of Nevada has already held that Mr. Keber's co-defendant, Gary Hyde, could be released on bond in spite of his U.K. citizenship and lack of ties to the United States. *United States v. Gary Hyde,* Case No.: 2:11-mj-00054-PAL.

---

[1] These crimes include crimes of violence, an offense for which the sentence is life imprisonment or death, a serious drug offense, or a felony committed by certain repeat offenders. *See* 18 U.S.C. § 3142(f)(1)(A)-(E). Mr. Kleber's alleged violation of 18 U.S.C. § 545 and 18 U.S.C. § 2 does not fall under any of these enumerated offenses.

**B.  The District Court for the Western District of New York and Courts Elsewhere Have Granted Pretrial Release for Defendants Under Similar Circumstances.**

The case against Mr. Kleber will eventually be tried in the Western District of New York and this court has, previously, granted pretrial release to a foreign defendant charged with non-violent offenses over the objection of the government.  In *United States v. Kantipuly*, 2007 WL 463125 (W.D.N.Y. Feb. 9, 2007), the defendant, charged with 128 counts of conspiracy to defraud the United States, mail and wire fraud, was a Canadian resident and a dual citizen of Canada and the United States.  *Id.* at *8.  The defendant's only tie to the United States was ownership of some property interests, but he had strong ties to Canada; the Court noted that he maintained his primary residence there and his ex-wife and children lived there.  *Id.* The government sought detention solely on the ground that the defendant was a serious flight risk. *Id.* at *7.  Despite the defendant's foreign citizenship and minimal ties to the United States, both a magistrate judge and later the district court denied the government's request for pretrial detention.  *Id.* at *9.  While finding that "the defendant pose[d] a serious risk of flight," the court concluded that "there [were] conditions of release that [would] reasonably assure defendant's appearance at trial."  *Id.*  The relevant conditions of those imposed by the district court were: (1) $100,000 bail amount, half posted in cash and half secured by property; (2) defendant was required to live in, and prohibited to travel outside of, the Western District of New York; and (3) defendant, having already turned over his passports to the government, was prohibited from making any effort to obtain replacement passports.[2]  *Id.* at *9-10.

Indeed, Mr. Kleber's co-defendant, Gary Hyde was just released from custody earlier this week (January 25, 2011) by Magistrate Judge Peggy Leen from the District of Nevada.  *United*

---

[2] Two other conditions imposed upon the defendant were: (4) defendant was required to provide proof to Pretrial Services that he had renounced his Indian citizenship; and (5) defendant was required to provide documentary proof of the sale of certain property.  *Id.* at *10.

*States v. Gary Hyde,* Case No.: 2:11-mj-00054-PAL.[3]   As this Court is not doubt aware, Mr.

Hyde was a U.K. citizen with no ties to the United States facing identical charges to Mr. Kleber.

The Magistrate Judge rejected the government's claim that Mr. Hyde should be detained solely

based on his U.K. citizenship.   The Magistrate Judge also considered the fact that Mr. Hyde's

counsel calculated his Guideline range to be approximately 10-16 months (the government did

not rebut that representation when asked directly if it had come up with a different calculation).

The government sought and received a stay of the Magistrate Judge's order for 48 hours pending

appeal.

   The *Kantipuly* and *Hyde* court's pretrial release orders for foreign defendants are not an

anomaly.   Other courts have granted pretrial release to defendants under similar conditions.   In

*United States v. Bodmer,* 2004 WL 169790 (S.D.N.Y. Jan. 28, 2004), the defendant was a

wealthy Swiss citizen that was arrested in South Korea and extradited to the United States to face

charges alleging violations of the Foreign Corrupt Practices Act ("FCPA").   *Id.* at *1.   In

*Bodmer,* the government claimed that the defendant had "a strong incentive to flee because

pursuant Swiss law, the Swiss government will not extradite Swiss nationals.   Moreover, the

Swiss government will not recognize [the defendant's] written waiver of his right to avoid

extradition."   *Id.* at *2.   The district court, however, rejected the government's claim explaining

that "this argument alone cannot be a basis for denying bail because if taken to its logical

conclusion, no Swiss national would ever be eligible for bail."   *Id.*   The court acknowledged that

"[w]henever a court grants bail there is a risk that the defendant will flee," but it refused to find

---

[3] Magistrate Judge Leen ordered Mr. Hyde released on the following conditions: (1) pretrial supervision with GPS monitoring; (2) $25,000.00 cash bond; (3) home in wife's name, owned outright, shall be posted as security/surety; (4) defendant required to execute a waiver of rights against extradition from the U.S. to U.K.; (5) maintain residence, unless ordered otherwise by the Judge in the WDNY; (6) no entry/not be near or in vicinity of an airport/train without the expressed permission of the court; (7) surrender passport to Pretrial Services within 24 hours of arrival in WDNY; and (8) do not seek/obtain new passport.

that the government had met its burden when "[i]ts argument is based, in large part, on speculation." *Id.* at 3. Thus, the court concluded that there were conditions of release that were sufficient to reasonably assure the defendant's presence at trial.[4] *Id.* at *3.

Similarly, in *United States v. Hansen*, 108 Fed. Appx. 331 (6th Cir. 2004), the court of appeals for the Sixth Circuit considered the government's appeal of a release order for a defendant charged with bulk cash smuggling. The order allowed the defendant, a resident and citizen of Denmark, to leave the United States and return to Denmark. *Id.* at 331. Again, the government argued that the defendant should be detained since he was a citizen of Denmark and could not be extradited. *Id.* at 332. The Sixth Circuit rejected the government's argument, holding that, "[t]he bail statute does not [] require that foreign defendants be detained simply because their return cannot be guaranteed through extradition." *Id.* Citing the Eighth Circuit in *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985), the *Hansen* court explained:

> The structure of the [bail] statute mandates every form of release be considered before detention may be imposed. That structure cannot be altered by building a "guarantee" requirement atop the legal criterion erected to evaluate release conditions in individual cases. *Id.*

Even in cases with defendants facing significantly more serious charges, courts have rejected the government's claim that detention was necessary because of a defendant's foreign citizenship. For example, in *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004), the defendant was an Israeli national who had been residing in South Africa for the previous eighteen years. He was charged with violating federal export laws by acquiring and then

---

[4] The conditions imposed upon the defendant's release were: (1) a bond in the amount of $1 million, in the form of an irrevocable standby letter of credit; (2) that defendant will live in the Washington, D.C. area – outside of the district where he was to be tried – with family friends; (3) as security for the bond, the friends with whom defendant will reside will post their home as surety; (4) defendant will execute a waiver of extradition from Switzerland; (5) defendant will agree to the reporting obligations and will wear an electronic monitor; and (6) in the event that defendant flees, the unused portion of his attorneys' retainer will be forfeited to the government. *Id.* at *1.

exporting to Pakistan triggering devices for nuclear weapons. *Id.* at 130. Despite the egregious nature of the defendant's alleged crime, that "the weight of evidence against [him was] substantial," and the fact that he "had no ties to the United States or to the Washington, D.C. area," the court ordered he be released on bond with conditions.[5] *Id.* at 131. *See also United States v. Hanson*, 613 F. Supp. 2d 85, 91 (D.D.C. 2009) (Chinese citizen granted release over the government's objection, finding that conditions could be fashioned that would reasonably assure the defendant's presence at trial.);[6] *United States v. Barrera-Omana*, 638 F. Supp. 2d. 1108 (D. Minn. 2009) (Mexican illegal alien released on bond after being charged with possession with intent to distribute one kilo of cocaine).

As these cases demonstrate, the government cannot establish that detention is appropriate based solely on the fact that the defendant is a foreign citizen—even of a country where extradition is not possible. Instead, the bail statute requires that courts, and the government, consider individual circumstances when determining whether conditions can be designed for the pretrial release of foreign citizens that serve to reasonably assure their attendance at trial. There are clearly conditions that can be fashioned for Mr. Kleber that will "reasonably assure" the Court of his attendance at trial.

---

[5] The conditions imposed by the court were: (1) waiver of rights to be extradited to the United States that he has under Israeli and South African extradition treaties with the United States; (2) release to third-party custody with home detention and electronic monitoring; (3) $75,000 bond posted on his behalf by a third party and $100,000 of the defendant's own funds; and (4) a commitment by a third-party to have someone with the defendant on a twenty-four hour basis, seven days a week.

[6] The Court imposed the following conditions of release: (1) GPS monitoring; (2) release to third-party custody; (3) in-home confinement; (4) prohibition from entering or being in the immediate vicinity of an airport; (5) prohibition on leaving the United States; (6) the posting a deed to a third-party home as security for bond. *Id.* at 91.

### C. The US-German Extradition Treaty Expressly Allows Mr. Kleber's Extradition if Necessary.

Mr. Kleber is a German citizen and the government has previously indicated that it has concerns regarding its ability to extradite Mr. Kleber should he be released and flee the United States to Germany. However, a close inspection of The Treaty Between The United States of America and the Federal Republic of Germany Concerning Extradition (the "Treaty") reveals that Mr. Kleber would be fully extraditable under the Treaty. *32 U.S.T. 1485.*

Article 2, paragraph 1(a) of the Treaty refers to an appendix of enumerated 'extraditable offenses' which includes "offenses against the laws relating to importation, exportation or transit of goods, articles, or merchandise." *32 U.S.T. 1485, app. ¶ 27(a).* Paragraph 2(a) of the same article states that if the extradition is for purposes of prosecution, the offense must carry a maximum penalty in excess of one year. Mr. Kleber is charged with violating 18 U.S.C. § 545 which specifically deals with importation offenses and carries a maximum penalty of 20 years' incarceration. By the terms of the Treaty, Mr. Kleber would be eligible for extradition.

Article 7 of the Treaty governs the extradition of nationals and paragraph 1 states that "[n]either of the Contracting Parties shall be bound to extradite its own nationals," but goes on to state that the country receiving the extradition request may choose to extradite its own national if it determines that doing so is proper and not precluded by law. *32 U.S.T. 1485 art. 7, ¶ 1.* As the complaint against Mr. Kleber makes clear, the Bundeskriminalamt ("BKA"), the German Federal Police, is aware of and has participated in the government's investigation of Mr. Kleber. The BKA gave U.S. investigators access to the results of its investigation which included recordings of intercepted telephone calls and copies of electronic mail. Given this previous and substantial cooperation between German and U.S. authorities, it seems highly unlikely that the

German government would not honor an extradition from the United States for Mr. Kleber under terms of the Treaty.

Finally, as discussed below, Mr. Kleber stands ready to sign a waiver regarding his rights to contest extradition under the Treaty.  This waiver would form the basis of a 'simplified extradition' pursuant to Article 18 of the Treaty which states:

> If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may grant his extradition without a formal extradition proceeding having taken place.  *32 U.S.T. 1485, art. 18.*

With an executed waiver in its possession the United States can be reasonably assured of an expedited transfer of Mr. Kleber from Germany to the United States if extradition ever becomes necessary.  Given the conditions outlined below, such a situation should never arise.

### D. The Federal Sentencing Guidelines and Previous Sentences Under 18 U.S.C. § 545 Suggest Mr. Kleber's Pretrial Incarceration Could Exceed a Possible Sentence.

Based on counsel's preliminary Federal Sentencing Guidelines (the "Guidelines") calculations, even if the government were to convict Mr. Kleber of the offense he has been charged with, he would be facing only a minimal term of incarceration, if any.  Specifically, pursuant to § 2T3.1 [Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property] of the Guidelines, the base offense level is calculated from the import duty lost to the smuggling.  Since there are no allegations that Mr. Kleber's conduct caused any loss of import duties, Mr. Kleber's base offense level could be as low as 4.  *See* § 2T3.1(a)(3).  Even if a court were to find that the offense involved "sophisticated means," the base offense level would only increase to a level 12.  § 2T3.1(b)(1).

Even assuming that that the "sophisticated means" enhancement is applied, Mr. Kleber will remain eligible for a two-point reduction for acceptance of responsibility thereby bringing his offense level down to 10. An offense level of 10 with no criminal history places Mr. Kleber in Zone B of the sentencing table with a suggested sentence of six to twelve months.

The calculations outlined above are consistent with previous sentences ordered in similar cases involving 18 U.S.C. § 545. In *United States v. White*, 87 Fed.Appx. 566 (6th Cir. 2004), the defendant was charged with one count of importing forty-five high-capacity firearm magazines in violation of 18 U.S.C. § 545 and one count of importing forty-five high-capacity firearm magazines by means of a false and fraudulent declaration in violation of 18 U.S.C. § 542. The defendant and a companion returned to the United States after two weeks of travel throughout Europe and provided declaration forms declaring small purchases of beer, wine, and chocolate. The defendant was asked whether he had additional items to declare but he denied having acquired other items abroad. A search of the defendant's bag found forty-five high-capacity firearm magazines and a rifle stock. When asked why he had failed to declare these items, the defendant stated that he had traded for the items and did not believe that he needed to declare them. He repeated that statement to multiple interviewers. The government then uncovered an invoice from a gun shop in Berne, Switzerland that documented the sale of the firearm magazines. After a trial in which he was found guilty, the court ultimately sentenced the defendant to twelve months and one day on each count, with the terms to run concurrently.

The facts alleged in the complaint against Mr. Kleber involve the well-documented importation of products whose legality turns on a question of fact involving their manufacture. The smuggling of which he is accused touches the outer limits of highly-specialized trade restrictions and neither the Guidelines nor previous case law suggest a possible penalty greater

11

than six months to one year.   Given the amount of foreign evidence identified by the government, it is likely that the pretrial proceedings alone in this case could take up to a year or more.   Detaining Mr. Kleber for a period of time equal to or greater than any possible incarceration he may face is both unwarranted and, as outlined below, unnecessary. *See United States v. Shareef*, 907 F. Supp. 1481, 1484 (D.Kan. 1995) ("fundamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which he or she would be subject prior to a determination of guilt").

**E. Mr. Kleber Should be Released on Bond Because a Set of Conditions Can Be Fashioned That Will Reasonably Assure his Attendance at Trial.**

In order to assure this Court of Mr. Kleber's intent to appear for all proceedings, and considering the conditions that other courts have approved for foreign citizen defendants, Mr. Kleber suggests the following conditions would be appropriate in this matter:

1. $50,000 cash bond;[7]

2. Release into the third-party custody of Mr. Raymond Hamilton of Mesquite, Texas;

3. GPS or in-home monitoring;

4. Restriction of travel to Mesquite, Texas and the immediate surrounding area as well the Western District of New York to allow his attendance at hearings in this matter;

---

[7] Mr. Kleber is not able to post additional funds.  Mr. Kleber supports a wife and two young daughters who remain in Portugal.  To post additional funds would put their well-being at risk and would make it difficult for Mr. Kleber to pay for his defense in this action.  Accordingly, requiring Mr. Kleber to post additional funds will effectively result in his continued pretrial detention, which would run counter to the interests outlined in the Bail Reform Act. *See* 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person.").

5. Waiver of any rights not to be extradited to the United States that he has under Germany's extradition treaty with the United States; and

6. Mr. Kleber shall check in with Pretrial Services on a daily basis, or at any other interval deemed necessary by Pretrial Services;

The conditions outlined here are those Mr. Kleber believes are appropriate to reasonably assure his attendance at trial. He will also willingly abide by any other additional conditions this court deems necessary.

**F. An ICE Detainer is Not a Determinative Pretrial Detention Factor.**

Immigration and Customs Enforcement ("ICE") has issued a detainer for Mr. Kleber. Such a detainer is an administrative request by ICE to postpone the release of an individual for forty-eight hours to permit the agency the opportunity to determine whether to initiate immigration proceedings against that individual. *See* 8 C.F.R. § 287.7(a),(f). Detainers are customary in cases where criminal charges are brought against foreign nationals to assure that aliens are not released if they are otherwise deportable.

This detainer should not prevent this Court from granting Mr. Kleber's request for pretrial release for two reasons. First, Mr. Kleber traveled to the U.S. legally under the State Department's Visa Waiver Program, and therefore the initiation of any immigration enforcement action against him is extremely unlikely. Mr. Kleber traveled to from Germany to the United States, arriving at Newark International Airport. The purpose of Mr. Kleber's travel was to visit Mr. Raymond Hamilton in Texas and attend an industry trade show at the Sands Expo and Convention Center in Las Vegas, Nevada. Accordingly, there is no basis for an immigration enforcement action against him and he will most likely be released after appearing before an immigration judge.

13

The second reason that this ICE detainer should not prevent this Court from releasing Mr. Kleber is that courts have routinely held that "the mere presence of an ICE detainer *is not a determining detention factor.*" *Barrera-Omana*, 638 F. Supp. 2d. at 1112 (emphasis added). In *Barrera-Omana*, the government argued that as a result of an ICE detainer, the court should have denied the defendant's request for pretrial release. The court disagreed with this contention and granted pretrial release, explaining that:

> In fine, the government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be. *See United States v. Delker,* 757 F.2d 1390, 1399 (3d Cir.1985) ("[T]he characteristics that will support pretrial detention may vary considerably in each case, and thus Congress has chosen to leave the resolution of this question ... to the sound discretion of the court's acting on a case-by-case basis.") (quotations omitted). If the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer. No other factor matters; neither danger to the community nor risk of flight, nor any kind of individualized consideration of a person before the Court. Each, according to the government, has been swallowed by an ICE detainer.

*Id.* at 1111. Other courts, on the basis of similar reasoning, have reached this same conclusion. *See United States v. Montoya-Vasquez*, 2009 WL 103596 at *5 (D. Neb. Jan. 13, 2009) (granting bail with conditions despite an ICE detainer, and concluding that, "[i]f the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions."); *United States v. Perez*, 2008 WL 4950992 at *2 (D. Kan. Nov. 18, 2008) (holding that "Defendant's unlawful status and the presence of the ICE detainer are not sufficient grounds to prevent Defendant's pretrial release."); *United States v. Garcia-Gallardo*, 2009 WL 113412 at *2 (D. Kan. Jan. 15, 2009) (ordering pretrial release and noting "that the existence of the ICE detainer is not in and of itself sufficient grounds to find that Defendant poses a flight risk."); *United States v. Villanueva-Martinez*, 707

F. Supp. 2d 855, 858 (N.D. Iowa 2010) (granting pretrial release for a defendant with an ICE detainer).

For these reasons, Mr. Kleber's ICE detainer should not result in his continued detention, and the decision regarding pretrial release should be made independent of ICE's determination regarding whether to institute immigration enforcement proceedings. As the court noted in *Barrera-Omana*, where an ICE detainer has been issued, "[t]he problem [] is not that [the] defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. ... It is not appropriate for an Article III judge to resolve Executive Branch turf battles." *Barrera Omana*, 638 F. Supp. 2d at 1111-12.

### III.
### CONCLUSION

Given the strong presumption in favor of pretrial release, and the availability of a set of conditions that would reasonably ensure Mr. Kleber's appearance before the District Court for the Western District of New York, Mr. Kleber respectfully requests that this Court order he be released pursuant to whatever conditions it finds necessary and appropriate.

DATED this 26th day of January, 2011.


*Of Counsel:*
Eric H. Sussman, Esq.
James L. Athas, Esq.
KAYE SCHOLER LLP
3 First National Plaza
70 W. Madison St., Suite 4100
Chicago, Illinois 60602
Telephone: (312) 583-2442
Fax: (312) 583-2546
esussman@kayescholer.com

Jeffrey L. Ciccone
Assistant Federal Public Defender
28 East Main Street
First Federal Plaza, Suite 400
Rochester, New York 14614
Telephone: (585) 263-6201
Fax: (585) 263-5871

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

        v.                          10-MJ-605(F)

KARL KLEBER,

              Defendant.

_____

## CERTIFICATE OF SERVICE

      I hereby certify that on January 26, 2011, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

    1.      Frank H. Sherman, AUSA – frank.sherman@usdoj.gov

      And, I hereby certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participant(s).

    1.

_____
Federal Public Defender's Office
28 E. Main Street, Suite 400
Rochester, New York 14614
585-263-6201

AO 72A
(Rev. 8/82)